RYAN H. CROSNER, CA Bar No. 278418
ryan.crosner@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendant
C2 EDUCATIONAL SYSTEMS INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DINO MOODY, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

C2 EDUCATIONAL SYSTEMS INC.; and DOES 1 through 25, inclusive,

Defendants.

Case No. 2:24-cv-04249-RGK-SK

**DEFENDANT C2 EDUCATIONAL SYSTEMS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**

Date: July 15, 2024
Time: 9:00 a.m.
Place: Courtroom 850
Roybal Federal Building, and
United States Courthouse

Complaint Filed: May 22, 2024
Trial Date: None Set
Judge: Hon. R. Gary Klausner

# NOTICE OF MOTION AND MOTION TO DISMISS

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

NOTICE IS GIVEN that on July 15, 2024, at 9:00 a.m., or as soon thereafter as the matter can be heard before the Honorable R. Gary Klausner, in Courtroom 850, 8th Floor of the Roybal Federal Building and U.S. Courthouse, located at 255 East Temple Street, Los Angeles, CA 90012, Defendant C2 Educational Systems Inc. ("C2 Education") will and hereby does move the Court for an order dismissing with prejudice Plaintiff's Complaint asserted against it in this action.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 13, 2024. This Motion to Dismiss is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and upon such oral argument and other submissions that may be presented at or before the hearing on this Motion.

DATED: June 14, 2024

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Ryan H. Crosner*
Ryan H. Crosner

Attorneys for Defendant
C2 EDUCATIONAL SYSTEMS INC.

# TABLE OF CONTENTS


I. INTRODUCTION ..... 9

II. FACTUAL ALLEGATIONS ..... 10

III. LEGAL STANDARD ..... 11

IV. ARGUMENT ..... 11

A. Plaintiff's Proposed Interpretation of Section 638.51 Would Subject Every Website to Criminal Liability. ..... 11

1. Section 638.51 is Inapplicable to the Software at Issue in this Case. ..... 11

2. Section 638.51 Should Not be Interpreted to Criminalize Basic Website Functionality. ..... 14

B. Plaintiffs' Claim is Defeated by Consent Because Only C2 Education's Consent is Required for Installation of the TikTok Software. ..... 16

C. Section 638.51 Does Not Apply to the Content of a Communication. ..... 19

D. Section 638.51 Does Not Provide a Private Right of Action. ..... 21

V. CONCLUSION ..... 23

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACA International v. FCC*,
885 F.3d. 687 (D.C. Cir. 2018)....16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....11

*Bell v. Farmers Ins. Exch.*,
87 Cal. App. 4th 805 (2001) (noting California courts give deference to interpretations of analogous federal laws)....21

*Cal. Sch. Bds. Ass'n v. State Bd. of Educ.*,
240 Cal. App. 4th 838 (2015)....21

*Capitol Records Inc. v. Thomas-Rasset*,
06-1497, 2009 WL 1664468 (D. Minn. June 11, 2009)....16

*Coburn v. Sievert*,
133 Cal. App. 4th 1483 (2005)....21

*Columbia Pictures Indus. v. Bunnell*,
No. CV 06-1093FMCJCX, 2007 WL 2080419 (C.D. Cal. May 29, 2007)....14

*Crusader Ins. Co. v. Scottsdale Ins. Co.*,
54 Cal. App. 4th 121 (1997)....22

*In re DoubleClick Inc. Privacy Litigation*
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....18

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)....13, 14, 15, 22

*In re Innovatio IP Ventures, LLC Patent Litig.*,
886 F. Supp. 2d 888 (N.D. Ill. 2012)....16

*Levings v. Choice Hotels Intern.*,
No. 23STCV28359, 2024 WL 1481189 (Cal. Super. Apr. 03, 2024)....14, 15

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Mar. 13, 2024)....14, 15

*Malibu Media, LLC v. Pontello*,
No. 13-12197, 2013 WL 12180709 (E.D. Mich. Nov. 19, 2013)....16

*Mejia v. Reed*,
31 Cal. 4th 657 (2003)....12

*Mendiondo v. Centinela Hops. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008)....11

*N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578 (9th Cir. 1983) .......... 11

*People v. Avery*, 27 Cal. 4th 49 (2002) .......... 12

*S. Bell Tel. & Tel. Co. v. Hamm*, 306 S.C. 70 (1991) .......... 17

*Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 23

*Sparshott v. Feld Ent., Inc.*, 311 F.3d 425 (D.C. Cir. 2002) .......... 17

*United States v. Smith*, 155 F.3d 1051 (9th Cir. 1998) .......... 18

*Vasquez v. Solo 1 Kustoms, Inc.*, 27 Cal. App. 5th 84 (2018) .......... 21

*Wallace v. Cellco P'ship*, 14-cv-8052, 2015 WL 13908106 (C.D. Cal. Feb. 9, 2015) .......... 21

*Warden v. Kahn*, 99 Cal. App. 3d 805 (1979) .......... 12

*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 23

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) .......... 19, 20

**STATUTES**

18 U.S.C. § 3121 .......... 21

18 U.S.C. § 3121(b)(1) .......... 14

Cal. Pen. Code § 638.50 .......... 19

Cal. Pen. Code § 638.51(b)(1) .......... 14

Cal. Pen. Code § 638.51(b)(5) .......... 17

Cal. Pen. Code § 638.51(c) .......... 12, 21

Cal. Penal Code § 629.51(a)(1)-(2) .......... 11

Cal. Penal Code § 637.2 .......... 10, 11, 22, 23

Cal. Penal Code § 638.51 .......... *passim*

Cal. Penal Code § 638.52 .......... 12, 13

Cal. Penal Code § 638.52(d)(1)-(3) .......... 12

Cal. Penal Code § 638.52(d)(3) .......... 13

**OTHER AUTHORITIES**

2015 California Assembly Bill No. 929, California Reg Sess. .......... 17

*Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995) .......... 12

*Available at* http://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-0950/ab_929_cfa_20150615_111837_sen_comm.html .......... 22

*Available at* http://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-0950/ab_929_cfa_20150615_111837_sen_comm.html .......... 17

*Available at* http://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-0950/ab_929_cfa_20150406_093935_asm_comm.html .......... 22

**Cases**

*ACA International v. FCC*, 885 F.3d. 687 (D.C. Cir. 2018) .......... 8

*Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995) .......... 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 3

*Bell v. Farmers Ins. Exch.*, 87 Cal. App. 4th 805 (2001) .......... 13

*Cal. Sch. Bds. Ass'n v. State Bd. of Educ.*, 240 Cal. App. 4th 838 (2015) .......... 13

*Capitol Records Inc. v. Thomas-Rasset*, 06-1497, 2009 WL 1664468 (D. Minn. June 11, 2009) .......... 8

*Coburn v. Sievert*, 133 Cal. App. 4th 1483 (2005) .......... 13

*Columbia Pictures Indus. v. Bunnell*, No. CV 06-1093FMCJCX, 2007 WL 2080419 (C.D. Cal. May 29, 2007) .......... 6

*Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal. App. 4th 121 (1997) .......... 14

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 5, 14

*In re DoubleClick Inc. Privacy Litigation* 154 F. Supp. 2d 497 (S.D.N.Y. 2001) .......... 10

*In re Innovatio IP Ventures, LLC Patent Litig.*, 886 F. Supp. 2d 888 (N.D. Ill. 2012)

.......... 8
*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) .......... 11
*Levings v. Choice Hotels Intern.*, Inc., No. 23STCV28359, 2024 WL 1481189 (Cal. Super. Apr. 03, 2024) .......... 6
*Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Mar. 13, 2024) .......... 6
*Malibu Media, LLC v. Pontello*, No. 13-12197, 2013 WL 12180709 (E.D. Mich. Nov. 19, 2013) .......... 8
*Mejia v. Reed*, 31 Cal. 4th 657 (2003) .......... 4
*Mendiondo v. Centinela Hops. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008) .......... 3
*N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578 (9th Cir. 1983) .......... 3
*People v. Avery*, 27 Cal. 4th 49 (2002) .......... 4
*S. Bell Tel. & Tel. Co. v. Hamm*, 306 S.C. 70 (1991) .......... 9
*Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 15
*Sparshott v. Feld Ent., Inc.*, 311 F.3d 425 (D.C. Cir. 2002) .......... 9
*United States v. Smith*, 155 F.3d 1051 (9th Cir. 1998) .......... 10
*Vasquez v. Solo 1 Kustoms, Inc.*, 27 Cal. App. 5th 84 (2018) .......... 13
*Wallace v. Cellco P'ship*, 14-cv-8052, 2015 WL 13908106 (C.D. Cal. Feb. 9, 2015) .......... 13
*Warden v. Kahn*, 99 Cal. App. 3d 805 (1979) .......... 4
*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 15

**Statutes**

Cal. Penal Code § 629.51 .......... 3
Cal. Pen. Code § 638.50 .......... 11, 14
Cal. Pen. Code § 638.51 .......... *passim*
Cal. Pen. Code § 638.52 .......... 4, 5

Cal. Pen. Code § 637.2 .......................................................................... 2, 3, 14

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................................ 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This lawsuit is one of countless near-identical complaints filed in state and federal courts in recent months by plaintiff's counsel under the California Invasion of Privacy Act ("CIPA"), with this one brought on behalf of Plaintiff Dino Moody ("Plaintiff"). "Boilerplate" in the truest sense of the word, the Complaint seeks to broadly apply a narrow and outdated telephone surveillance statute to any website using standard analytics tools in a way would effectively criminalize the operation of countless (if not all) websites currently in existence. To facilitate the mass filing of these suits, Plaintiff makes vague and conclusory allegations, failing to identify any specific data collection or injury specific to Plaintiff and instead asserting perceived grievances in broad terms without any factual backdrop specific to Plaintiff beyond the alleged date of visiting C2 Education's website. This ambiguity allows Plaintiff's counsel to file wave after wave of carbon copy complaints against any business with an online presence, such as C2 Education, without providing factual support for his various plaintiffs' purported claims.

In the present case, Plaintiff accuses C2 Education of installing "TikTok Software" that allegedly "acts via a process known as 'fingerprinting'" and "collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans." (Compl. ¶ 10.) Without identifying what, if any, information was actually collected from Plaintiff specifically, the Complaint asserts that this alleged spyware constitutes a "trap and trace device" under California criminal laws. Plaintiff's contention is not just baseless, but is also patently incorrect for several reasons.

First, Plaintiff's proposed interpretation, taken to its logical and extreme conclusion, would effectively criminalize the use of cellular phones, which record the incoming phone numbers of any calls that they receive.  Both the plain text and the

legislative history confirm that Section 638.51 was never intended to apply to standard website-specific analytics or tracking tools in the manner Plaintiff proposes. Second, even if these technologies could qualify as trap and trace devices, the only consent required would be that of the website owner—here, C2 Education—as the "user" of an "electronic communication service." Third, the majority of the information cited in Plaintiff's Complaint constitutes the content of a communication, and therefore is expressly excluded from Section 638.51 on its face. Fourth, Section 638.51 does not provide for a private right of action. Section 637.2 does not broadly provide a private right of action for all CIPA provisions, nor does it here.

For these reasons, and as further explained below, this Court should dismiss Plaintiff's Complaint with prejudice.

## II. <u>FACTUAL ALLEGATIONS</u>

C2 Education "is a provider of online tutoring programs intended for K-12 students … offer[ing] standardized test preparations, school subjects tutoring, college admission counseling, and boot camps." (Compl. ¶ 8.) Like most modern American companies, C2 Education operates a website, located at https://www.c2educate.com/, as part of its business. (*Id.*) Plaintiff claims to be a California resident who visited C2 Education's website on February 28, 2024, at which time "[w]ithout [his] knowledge or consent," C2 Education supposedly deployed (by means of rather ambiguously named "TikTok Software") a "de-anonymization process to identify [him] using electronic impulses generated from [his] device." (Compl. ¶ 9.)

Plaintiff claims that the "TikTok Software acts via a process known as 'fingerprinting'" wherein it "collects as much information as it can about an otherwise anonymous visitor to the Website" before matching it with other data that TikTok already has collected about "hundreds of millions of Americans" to identify the visitor. (Compl. ¶ 10). This process, Plaintiff claims, constitutes a "trap and trace process" and a violation of Cal. Penal Code § 638.51. (Compl. ¶¶ 9, 28-30).

## III. LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "[I]t demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party, the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. *Id.* Dismissal is proper when the complaint either (1) lacks a cognizable theory; or (2) fails to allege sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hops. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## IV. ARGUMENT

### A. Plaintiff's Proposed Interpretation of Section 638.51 Would Subject Every Website to Criminal Liability.

#### 1. Section 638.51 is Inapplicable to the Software at Issue in this Case.

To state a claim under Cal. Penal Code § 637.2, Plaintiff must allege sufficient facts to demonstrate that C2 Education implemented a trap and trace device without the consent of the "user" of a wire or electronic communication service in violation of Cal. Penal Code § 638.51. Because a "wire communication" involves the transfer containing the human voice, only an "electronic communication" is potentially at issue here. *See* Cal. Penal Code § 629.51(a)(1)-(2). Subject to certain limited exceptions, an "electronic communication" is broadly defined as "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system." *Id.* § 629.51(a)(2). To the extent there is ambiguity regarding the scope of this broad and vaguely worded statute, Section 638.51 should be construed in C2 Education's favor

as a statute with criminal penalties: "A violation of this section is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail . . . or by both that fine and imprisonment." *Id.* § 638.51(c); *see People v. Avery*, 27 Cal. 4th 49, 58 (2002) ("ambiguous penal statutes are construed in favor of defendants . . . [if] two reasonable interpretations of the same provision stand in relative equipoise"); *Warden v. Kahn*, 99 Cal. App. 3d 805, 814, 818, n.3 (1979) (as a penal statute, ambiguity in Section 631 should be interpreted narrowly).

CIPA's legislative materials and statutory framework confirm that Section 638.51 was never meant to apply to the software allegedly used here. "[W]ell-established rules of statutory construction" require that "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect," and separate sections, like Sections 638.51 and 638.52 here, "must be read together and so construed as to give effect, when possible, to all the provisions thereof." *Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003). CIPA limits the use of trap and trace devices to specific law enforcement purposes and requires that an order approving their use specify "the identity, if known, of the person to whom is leased or in whose name is listed the telephone line to which the pen register or trap and trace device is to be attached" and the identity "of the person who is the subject of the criminal investigation." Cal. Penal Code § 638.52(d)(1)-(3). These provisions demonstrate that the law refers specifically to interception of specific, targeted telephonic communications, and not to general website tracking pixels.

Notably, this District relied on the very same language still used in Section 638.52 to find the federal statute's language inapplicable to technologies similar to the software alleged here. *See Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197, 199–200 (C.D. Cal. 1995). As was the case in *Digital Analyzer*, here too the "construction of" the same "related sections" of CIPA (Cal. Penal Code § 638.52) evidence a clear legislative intent to apply only to physical devices capable of recording telephone numbers, not IP addresses. *Id.* at

200. A contrary reading would render CIPA a nullity. Instead, the narrow word choice in Section 638.52, enacted in tandem with Section 638.51, reflects a legislative intent to limit "the proscription against pen registers and trap and trace devices to prohibit only devices that are 'attached' to a telephone line"—a deliberate choice that "cannot be assumed to be inadvertent." *Id*. at 199–200.

Plaintiff's attempt to apply Section 638.51 to software that collects website visitors' IP addresses and other related device information cannot be squared with any of that. In direct contrast to the statutory text, the software at issue here is alleged to be installed on a website (not a "telephone line"), which has neither an associated phone "number" nor a "physical location." Indeed, it has nothing to do with telephone lines, telephone numbers, or telephone surveillance at all. Accordingly, it falls well outside the scope of Section 638.51's prohibition. Put simply, inherent in the law's definition of a "trap and trace device" is that the device will be "attached" to a "telephone line" with a "physical location." Cal. Penal Code § 638.52(d)(3).

Plaintiff will surely point to *Greenley v. Kochava, Inc.*, as referenced in the Complaint, in apparent support of his ability to sustain a claim. (*See* Compl. ¶ 19 (citing *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023)). However, *Greenley*'s holding was narrow in scope and inapposite to the facts here. In *Greenley*, the defendant (a data broker) provided software development kits (SDKs) to mobile app developers, which then integrated those SDKs into those mobile apps. *Id.* at 1035. These SDKs allegedly functioned as a pen register by surreptitiously collecting the users' geolocation, "search terms, click choices, purchase decisions and/or payment methods," and transmitting that information to the data broker, which then resold that information to companies for targeted advertising purposes. *Id.* The court noted the broad scope of the phrase "device or process" in Section 638.51 and that a "process" may include "software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'" *Id.* at 1050. Thus, the court rejected the defendant's assertion—at least at the motion to dismiss stage—"that a private company's

surreptitiously embedded software ***installed in a telephone*** cannot constitute a 'pen register.'" *Id.* (emphasis added).

This distinction is critical—in *Greenley*, the software was embedded in applications that were installed on the phones themselves. By contrast, Plaintiff voluntarily visited C2 Education's website, and the website collects information about visitors through software code embedded in the website, not via software surreptitiously installed in users' phones.

**2. <u>Section 638.51 Should Not be Interpreted to Criminalize Basic Website Functionality.</u>**

Far from being a method of covert surveillance, C2 Education's collection of device information is a standard operating procedure for websites. As such, even if any alleged tracking software on C2 Education's website otherwise qualified as a trap and trace or pen register *and* C2 were the provider of the electronic communication service (which C2 Education denies), this collection falls squarely within the permissible uses of such devices, which includes "[t]o operate, maintain, and test a wire or electronic communication service." Cal. Pen. Code § 638.51(b)(1); *cf. Columbia Pictures Indus. v. Bunnell*, No. CV 06-1093FMCJCX, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2007) (finding that federal pen register statute is not implicated because, "as plaintiffs correctly note, the collection of incoming IP addresses by defendants is exempt from this prohibition pursuant to 18 U.S.C. § 3121(b)(1) because defendants already and necessarily capture such data in their RAM … to operate the website").

Aside from *Greenley* (which is not applicable for the reasons discussed above), C2 Education is only aware of two decisions analyzing Section 638.51 in the specific context of claims against a website operator similar to those alleged in the Complaint. Both originated from the Superior Court of California, Central District, both reached different results, and both involved identical complaints and the same plaintiff. *See Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *1 (Cal. Super. Mar. 13, 2024) (sustaining demurrer); *Levings v. Choice Hotels Intern.*, Inc.,

No. 23STCV28359, 2024 WL 1481189, at *1 (Cal. Super. Apr. 03, 2024) (overruling demurrer). In a brief two paragraphs of analysis, the *Choice Hotel* court addressed and summarily rejected the only two grounds advanced by the defendant: (1) whether the defendant used a pen register and (2) whether the plaintiff consented to the use of the pen register, which the court found premature for a demurrer. Critically, the defendant in *Choice Hotels* did not advance—and the court did not address—the other grounds C2 Education has raised here, which were considered and adopted by the *Hickory Farms* court.

Specifically, when considering the issue of whether IP address tracking on Hickory Farms' website constituted an illegal pen register, the *Hickory Farms* court agreed with its federal counterparts that there is no legally protected interest in an IP address: "[e]ven assuming a qualifying [cellular] device was pled, the court agrees with the argument regarding the basis of consent under the guise of visiting a website, where an IP address may be voluntarily disclosed." *Id.* at 6. The court distinguished *Greenley*, holding that "nothing in the complaint establishes an IP address as equivalent to the 'unique fingerprinting' relied upon by the Southern District when finding embedded software into a mobile phone, thereby *providing unique location and other information normally within the domain of law enforcement officers with a warrant*." *Id.* (emphasis added). The court also found that "public policy strongly disputes [p]laintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator. Such a broad based interpretation would potentially disrupt a large swath of [I]nternet commerce...." *Id.*

This holding is consistent with prior holdings pertaining to collection of automatically transmitted device information (like IP addresses), which have declined to find violation of the federal Pen Register Act where a party "recorded the packets that included the IP address of the sender" because "the Pen Register Act cannot be intended to prevent individuals who receive electronic communications from

recording the IP information sent to them. If it did apply in those cases, then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet." *Capitol Records Inc. v. Thomas-Rasset*, 06-1497, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) (emphasis added); *see also Malibu Media, LLC v. Pontello*, No. 13-12197, 2013 WL 12180709, *4 (E.D. Mich. Nov. 19, 2013) (holding that the Pen Register Act had no application: "Because the IP address was voluntarily sent, the Pen Register Act cannot prevent [Malibu] from recording that information."). Here, as with the line of cases interpreting the Pen Register Act, Section 638.51 cannot be interpreted to apply to the collection of device identification data that is routinely sent when connecting to websites. Plaintiff's interpretation of Section 638.51would create liability every time a visitor connects to a website, a rule that would make the operation of any website impossible. "If [such a law] did apply" to the mere collection of incoming IP addresses and related device information, "then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the internet." *Capitol Records*, 2009 WL 1664468, at *3; *see also In re Innovatio IP Ventures, LLC Patent Litig.*, 886 F. Supp. 2d 888, 895 (N.D. Ill. 2012) (because "all Wi-Fi devices on a network necessarily receive addressing information to determine if a data packet is addressed to them," if capture of such information violated the prohibition on trap and trace devices, then "any user of a Wi-Fi network on which a third party was also operating" would be "in violation of the Act"). Such an "anomalous outcome[]" premised on an "unreasonable, and impossible, interpretation of the statute's reach" should be rejected. *ACA International v. FCC*, 885 F.3d. 687, 697 (D.C. Cir. 2018).

### B. Plaintiffs' Claim is Defeated by Consent Because Only C2 Education's Consent is Required for Installation of the TikTok Software.

Even if Plaintiff had successfully pleaded the existence of a "trap and trace device" (and he has not), Section 638.51 expressly allows the installation or use of

such a device with "the consent of the ***user of that service.***" Cal. Pen. Code § 638.51(b)(5) (emphasis added). Here, that "user" is C2 Education, and Plaintiff alleges that C2 Education consented to the installation of the TikTok Software, thus defeating his claims. (*See* Compl. ¶ 8.) For that additional reason, Plaintiff cannot prevail.

The legislature's use of the singular "user" for Section 638.51's consent requirement is a notable—and indeed, intentional—departure from other provisions of CIPA (such as Section 631's prohibition on wiretapping), which require the consent of *all* parties. As the California Legislature explained when enacting Section 638.51, "[u]nlike a wiretap," "pen registers and track and trace devices do not provide [access to] the content of the messages which are transmitted." 2015 California Assembly Bill No. 929, California 2015-2016 Regular Session.[1] Accordingly, "[w]iretap[s]" under CIPA are "subject to a much higher standard of scrutiny than" the pen registers and trap and trace devices at issue here. *Id.*

That makes sense. If the law required the consent of all parties before installing a pen register, then "it is hard to see how any caller ID system, even that used for emergency services, would be legal." *Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 432 (D.C. Cir. 2002) (interpreting an identical provision of federal law on which Section 638.51 was modeled). After all, a caller ID system allows the recipient of an inbound wire communication to learn and record the identity of the initiating party. *See id.* Accordingly, if laws like Section 638.51 were interpreted (contrary to their text) as requiring the consent of all parties to any communication, then all caller ID users would be criminals (since such users do not first obtain consent of incoming callers before obtaining their identity from the caller ID system). *See id.* Section 638.51 avoids that absurd result by requiring only the consent of one party (the "user," singular)—i.e., the "subscriber to the service," *see S. Bell Tel. & Tel. Co. v. Hamm*,

[1] *Available at* http://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-0950/ab_929_cfa_20150615_111837_sen_comm.html.

306 S.C. 70, 73 (1991) (interpreting materially identical provision of South Carolina law)—before allowing the installation of a trap and trace device. Similarly, Section 638.51 plainly does not prohibit C2 Education from installing software to determine things like incoming IP addresses on its own website without first obtaining permission from every website visitor—just as it does not prohibit every person from installing a caller ID device in their own home without first obtaining permission from every incoming caller.

A New York federal district court decision considered similar issues under the analogous federal provisions and reached a similar conclusion. *In re DoubleClick Inc. Privacy Litigation* 154 F. Supp. 2d 497 (S.D.N.Y. 2001). In *DoubleClick*, internet users brought a putative class action against DoubleClick, Inc. for its use of targeted advertising cookies on its customers' websites, alleging that such practices violated the Stored Communications Act, among other claims. *Id.* at 500–04. The Stored Communications Act, as the name suggests, regulates access to electronic communications while they are in storage (as opposed to in transit, which are regulated by the Wiretap Act). *See United States v. Smith*, 155 F.3d 1051, 1055–57 (9th Cir. 1998) (providing discussion of the "complex, often convoluted" interplay between the two laws). As relevant here, the *DoubleClick* court analyzed a Stored Communications Act exception, similar to the one at issue here, which provides that its prohibitions "do[] not apply with respect to conduct authorized... (2) by a user of that [wire or electronic communications] service with respect to a communication of or intended for that user." *DoubleClick*, 154 F. Supp. 2d at 507. Two important holdings emerged: first, Internet access is the "electronic communications service," and second, the "user" of the service is the DoubleClick-affiliated website. *Id.* at 508–09. In reaching those holdings, the court considered and rejected the plaintiff website visitors' arguments that they were the "users" for purposes of that exception. *Id.*

The same logic applies to CIPA's "user consent" exception. Like the websites in *DoubleClick* and caller-ID subscribers, C2 Education is the "user" of the

communication service at issue—i.e., the "TikTok Software." Plaintiff affirmatively alleges that C2 Education "partnered with TikTok to install [the] sophisticated software" at issue here. (Compl. ¶ 8.) That consent satisfies CIPA's "user consent" exception, just as the websites' installation of DoubleClick authorized DoubleClick's use of cookies, and just as the caller-ID subscribers' consent authorized the telephone company's use of trap and trace devices. Nothing more is required.

Plaintiff's contrary interpretation—that the individual website visitors must consent to the use of TikTok's advertising tools—would lead to absurd results that the California legislature could not have intended. Countless websites and mobile applications use cookies, pixels, and other standard advertising technologies to tailor content and ads to users' apparent interests. Under Plaintiff's theory, the use of these ubiquitous tools would constitute an illegal "trap and trace device" absent each individual website visitor's consent. That cannot be the law. CIPA's pen register and trap and trace provisions were intended to regulate specific forms of telephone surveillance by law enforcement, not criminalize routine internet advertising practices.

### C. <u>Section 638.51 Does Not Apply to the Content of a Communication.</u>

Even if Plaintiff had sufficiently pleaded the existence of a "pen register" or "trap and trace device," his claim would still fail because trap and trace devices only record signaling information, *not* the content of a communication. *See* Cal. Pen. Code § 638.50 (excluding "the contents of a communication" from the "trap and trace" definition). "Contents" refers to the "intended message conveyed by the communication"—it does not include record information regarding the characteristics of the message that is generated in the course of the communication. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). For instance, contact information provided as part of a sign-up process constitutes "content" because this information is the subject of the communication. *Id*. at 1107. And, while a URL that includes "basic identification and address information" is not "content," a URL disclosing a "search term or similar communication made by the user" "could constitute a communication"

under the statute. *Id.* at 1108–09. With the exception of the initial URL containing only C2 Education's website domain, Plaintiff's allegation that TikTok's technology simultaneously receives personal information entered on C2 Education's website would fall under the category of content, not signaling information.

Despite regurgitating the statutory definition of a "trap and trace device," the Complaint does not identify any captured "dialing, routing, addressing, or signaling information" specific to the Plaintiff. (Compl. ¶ 15). Rather, Plaintiff makes only generalized allegations of the data ostensibly collected, which includes "personal data entered on those websites, such as name, date of birth, and address," and "device and browser information, geographic information, referral tracking, and url tracking." (Compl. ¶¶ 11–12.) At no point does he specify which data points in the Complaint are the supposed "originating number or other dialing, routing, addressing, or signaling information [that is] reasonably likely to identify" Plaintiff. Plaintiff alleges that "when the website asks for information, such as name, date of birth, and address, the information is sent simultaneously to TikTok." (Compl. ¶ 12.) This "ask" presumably refers to the provision of the opportunity to enter this information in a fillable field somewhere on the website, such that the entered information would constitute the content of a communication and therefore be excluded from the scope of the trap and trace statute. Notably, nowhere in the Complaint does Plaintiff allege that he actually entered any information in fillable fields, instead alleging only that he "visited [C2 Education's] website on February 28, 2024," and C2 Education allegedly "deployed a de-anonymization process to identify Plaintiff using electronic impulses generated from Plaintiff's device." (Compl. ¶ 9.)

Although it is unclear what Plaintiff attempts to identify as the "originating number or other dialing, routing, addressing, or signaling information" that was unlawfully intercepted, the majority of the data elements identified above represent the content of a communication and therefore fall outside of the scope of Section 638.51. At best, the Complaint is hopelessly vague and cannot support an inference,

even taken in the light most favorable to Plaintiff, that any information collected would fall within the scope of Section 638.51.

**D. <u>Section 638.51 Does Not Provide a Private Right of Action.</u>**

Finally, Plaintiff's Complaint should be dismissed without leave to amend for the independent (and uncurable) reason that Section 638.51, like its federal counterpart (18 U.S.C. § 3121), does not enumerate a private right of action. *See Wallace v. Cellco P'ship*, 14-cv-8052, 2015 WL 13908106, at *7 (C.D. Cal. Feb. 9, 2015) ("[T]he [c]ourt finds no statutory basis for a private right of action under [18 U.S.C. § 3121]."). This interpretation is entitled to deference in interpreting similar provisions of California's parallel law. *See Bell v. Farmers Ins. Exch.*, 87 Cal. App. 4th 805, 817 (2001) (noting California courts give deference to interpretations of analogous federal laws). Instead, the statute only imposes criminal penalties. *See* Cal. Pen. Code § 638.51(c).

As this Court recognized, "[g]enerally, criminal statutes do not create private rights of action, and violations of criminal statutes cannot serve as a basis for civil liability." *Wallace*, 2015 WL 13908106, at *7; *see also Vasquez v. Solo 1 Kustoms, Inc.*, 27 Cal. App. 5th 84, 91 (2018) ("The Legislature's intention to create a private cause of action must be expressly stated or strongly implied in the statutory language or legislative history."). Even where statutory language appears clear, the court must assess whether the statute contains a latent ambiguity, or "some extrinsic evidence creates a necessity for interpretation for a choice among two or more *possible meanings.*" *Coburn v. Sievert*, 133 Cal. App. 4th 1483, 1495 (2005). "Such a necessity is present" where, as here, "a literal construction would produce absurd consequences." *Id.* (citations omitted). The court then looks to extrinsic aids, including the legislative history and the statutory scheme of which the statute is a part. *Id.* at 1496; *see also Cal. Sch. Bds. Ass'n v. State Bd. of Educ.*, 240 Cal. App. 4th 838, 854 (2015) ("we must read the words 'in their context and with a view to their place in the overall statutory scheme.'"). "[W]hen neither the language nor the history of a statute indicates an intent to create a new private right to sue, a party contending for judicial

recognition of such a right bears a heavy, perhaps insurmountable, burden of persuasion." *Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal. App. 4th 121, 133 (1997). Plaintiff has not met that burden (nor can he).

Plaintiff cites Cal. Pen. Code § 637.2 and *Greenley* for the proposition that "CIPA provides for a private right of action and imposes civil liability and statutory penalties." (Compl. ¶ 19.) But *Greenley* does not discuss whether Section 638.51 confers a private right of action, nor is it applicable for the reasons discussed *supra* Section IV(A). *See generally Greenley*, 2023 WL 4833466. And, the legislative history for Section 638.50 *et seq.* confirms that the trap and trace law does *not* confer a private right of action upon which Plaintiff can base his claim. Section 638.51 was enacted—along with the other statutory provisions comprising Assembly Bill (AB) 929—in 2015 for a very narrow purpose: "to authorize state and local law enforcement agencies to seek emergency orders for pen registers/trap and trace devices used in telephone surveillance, while requiring as a precondition a standard of evidence higher than under federal law." C.A. B. An., A.B. 929 Assem., 4/21/2015;[2] *see also* C.A. B. An., A.B. 929 Sen., 6/16/2015,[3] (purpose of AB 929 was to "create a comprehensive pen register/trap and trace device statute in the Penal Code to cover all requests [by law enforcement] for pen registers and trap and trace devices in California, including emergency pen registers."). This limited addition to the Penal Code to enable law enforcement activity does not confer any private right of action to pursue civil claims and monetary damages.

Contrary to Plaintiff's contention, Section 637.2(a), which says that "[a]ny person who has been injured by a violation of this chapter may bring an action against the person who committed the violation," also does not afford a private right of action

---

[2] *Available at* http://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-0950/ab_929_cfa_20150406_093935_asm_comm.html.

[3] *Available at* http://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-0950/ab_929_cfa_20150615_111837_sen_comm.html

for purported violations of Section 638.51. Indeed, this Court has not interpreted Section 637.2 as a carte blanche grant of a private right of action for all CIPA violations, and there is no reason to do so now. *See, e.g.*, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1085 (C.D. Cal. 2021) ("Yoon has, however, alleged sufficient facts to make out a CIPA § 635(a) [another CIPA section] claim against Quantum Metric if she has a private right of action. She does not." (emphasis added)); *see also ibid*. ("The parties do not cite, and the [c]ourt could not find authority on whether § 637.2(a) provides a private right of action for claims arising under § 635."); *see also Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 523 (C.D. Cal. 2021) ("agree[ing]" that "construal of § 637.2 as providing a private right of action for a violation of § 635 would be unconstitutional, as it would provide [p]laintiff a cause of action without suffering an injury-in-fact").

## V. CONCLUSION

For the reasons stated above, C2 Education respectfully requests that the Court grant its Motion to Dismiss with prejudice.

DATED: June 14, 2024

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Ryan H. Crosner*
Ryan H. Crosner

Attorneys for Defendant
C2 EDUCATIONAL SYSTEMS INC.