Robert Tauler, Esq. (SBN 241964)
Wendy Miele, Esq. (SBN 165551)
Tauler Smith LLP
626 Wilshire Blvd., Suite 550
Los Angeles, CA 90017
Telephone: (310) 590-3927
rtauler@taulersmith.com
wmiele@taulersmith.com

*Attorney for Plaintiff*
*Dino Moody*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DINO MOODY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>C2 EDUCATIONAL, a California limited liability company; DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: 2:24-cv-04249-RGK-SK<br><br>**PLAINTIFF DINO MOODY'S OPPOSITION TO DEFENDANT C2 EDUCATIONAL SYSTEMS INC.'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>DATE: July 15, 2024<br>TIME: 9:00 a.m.<br>COURTROOM: 850<br><br>Roybal Federal Building – U.S. Courthouse<br><br>Complaint Filed: May 22, 2024<br>Trial Date: None Set<br>Judge: Hon. R. Gary Klausner |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

I. SUMMARY OF THE ARGUMENT ........ 1

II. PERTINENT FACTS ........ 2

III. LEGAL STANDARD ........ 3

A. Standard for 12(b)(6) Motion to Dismiss ........ 3

B. Cal. Penal Code, § 638.51, California Trap and Trace Law ........ 3

IV. ARGUMENT ........ 4

A. Defendant Misstates the Trap and Trace Statute ........ 4

1. The Statute is Unambiguous ........ 4

2. Cal. Penal Code, § 629.51 Is Not Relevant Because It Does Not Provide the Definitions for California's Trap & Trace Law ........ 6

3. A Federal Statutory Definition of a Pen Register Is Not Relevant ........ 6

4. Defendant Misstates *Greenley v. Konchava, inc.* ........ 7

a. Addressing injury in fact ........ 7

b. Addressing alleged violation of Cal. Penal Code § 638.51 ........ 9

B. TikTok Software on the Website Is Not "Basic Website Functionality" ........ 10

C. Plaintiff Alleges She Did Not Consent ........ 13

D. Cal. Penal Code, § 638.51 Is Essentially a Strict Liability Statute ........ 14

E. Plaintiff Has Standing to Prosecute the Action ........ 14

V. CONCLUSION ........ 17

LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE ................................ 19

CERTIFICATE OF SERVICE ..................................................................... 20

# TABLE OF AUTHORITIES

Cases


*Azarte v. Ashcroft*, 394 F.3d 1278 (9th Cir. 2005) .......... 4

*Byars v. Hot Topic, Inc.,* 656 F. Supp. 3d 1051 (C.D. 2023).......... 14

*Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156 (9th Cir. 2016)....... 3

*Carson Harbor Vill., Ltd. v. Unocal Corp*., 270 F.3d 863 (9th Cir. 2001) .......... 4

*Cervantez v. Sullivan*, 719 F.Supp. 899 (E.D. CA 1989) .......... 4

*Columbia Pictures Indus. v. Bunnell*, No. cv 06-1093FMCJCX, 2007 WL 2080419 .......... 11

*Davis v. Federal Election Comm'n*, 554 U.S. 724 (2008).......... 17

*Gaos v. Google Inc*., No. 5:10-cv-4809 EJD, 2012 WL 1094646 (N.D. Cal. Mar. 29, 2012) .......... 7, 17

*Gilligan v. Jamco Dev. Corp*., 108 F.3d 246 (9th Cir. 1997) .......... 3

*Graham v. Noom, Inc*., 533 F.Supp.3d 823.......... 15

*Greenley v. Konchava, Inc*., 684 F. Supp. 3d 1024 (S.D. Cal. 2023)..........7, 13, 15, 16, 17

*In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589 (9th Cir. 2020) ..........15, 16, 17

*In Re United States*, 885 F. Supp. 197 (C.D. Cal. 1995) .......... 7

*Levings v. Choice Hotels Intern, Inc*. LA Superior Court Case No. 23STCV28359 2024 WL 1481189 (Cal. Super. April 3, 2024) .......... 12, 13

*Licea v. Hickory Farms, LLC* LA Superior Court Case No. 23STCV26148, 2024 WL 1698147 (Cal. Super. March 13, 2024)........................................... 12

*Patel v. Facebook, Inc*., 932 F.3d 1264 (9th Cir. 2019) ....................................... 15

*TransUnion v. Ramirez*, 594 U.S. 413 (2021)..................................................... 17

*United Medical Management Ltd. v. Gatto*, 49 Cal. App. 4th 1732 (2016)............. 5

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004)................................................ 14

Statutes

Cal. Penal Code § 538.50(b)................................................................................ 9

Cal. Penal Code § 538.51(b)(1) ........................................................................... 13

Cal. Penal Code § 637.2(a)............................................................................ 14, 15

Cal. Penal Code § 638.50(c)................................................................................ 5

Cal. Penal Code § 638.51 ............................................................................... 9, 13

# I. SUMMARY OF THE ARGUMENT

Defendant C2 Educational has embedded TikTok Software on its website that transmits electronic signals and impulses as soon as Plaintiff lands on any page of the Defendant's website. This TikTok Software tracks a user's location, search terms, browsing history, and purchase history, among the numerous types of information it collects from unsuspecting visitors. The process constitutes a trap and trace device. This is a violation of the California Trap and Trace Law, Penal Code § 638.51(a).

Each of Plaintiff's arguments in support of the Motion to Dismiss fail. The statute is unambiguous, yet Defendant's own interpretation misstates the trap and trace statute. Defendant improperly relies on federal trap and trace statutes, which are different than the California penal code. TikTok Software is not "basic website functionality" of every Internet website that Plaintiff is purportedly attempting to criminalize, as Defendant wrongly portrays. Indeed, there is good reason why the California legislature would seek to protect its citizens from unprecedented and advanced technological intrusions to individual privacy rights, not to mention why the Congress is in agreement that TikTok poses a danger to our society.

Further, Defendant's website does not fall within any exceptions to immunize it from liability under Cal. Penal Code, § 638.51(b). Plaintiff also has standing to prosecute the lawsuit. For these reasons and as discussed in further detail below, the Court should deny the Motion to Dismiss.

## II. <u>PERTINENT FACTS</u>

Defendant operates a website, www.c2education.com (the "Website"), that offers online tutoring programs for students in grades K through 12. Compl. ¶ 8. "As part of Defendant's marketing regime, C2 Education has partnered with TikTok to install sophisticated software on its landing page to learn the location, source, and identity of consumers who happen to land on their Website." *Id.* "The TikTok Software acts via a process known as 'fingerprinting'" to collect private information from visitors for marketing and surveillance purposes of Defendant and TikTok. Compl. ¶ 10.

Plaintiff, a California resident, visited the Website on February 28, 2024. Compl. ¶ 9. Without Plaintiff's knowledge or consent, Defendant deployed a "de-anonymization process" to collect private data about Plaintiff using electronic impulses from Plaintiff's device. Compl. ¶¶ 9 – 11.

The TikTok Software runs on every page of Defendant's website sending to TikTok images of the Website user's interests. Compl. ¶¶ 12 – 13. "The C2 Education Website instantly sends communications to TikTok when a user lands, and every time a user clicks on a page." Compl. ¶ 14.

The TikTok Software "is designed to capture the phone number, email, routing, addressing and other signaling information of Website visitors. As such, the TikTok Software is designed precisely to identify the source of the incoming electronic and wire communications to the Website." Compl. ¶ 30. Defendant did

not obtain consent from Plaintiff or any of the class members before using trap and trace technology to identify users of its Website, and has violated Section 638.51. *Id*.

## III. LEGAL STANDARD

### A. Standard for 12(b)(6) Motion to Dismiss

As the Ninth Circuit has observed, "The [Rule 12(b)(6)] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Dev. Corp*., 108 F.3d 246, 249 (9th Cir. 1997). The Court "must accept" all facts alleged by Plaintiff "as true." *Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016).

### B. Cal Penal Code, § 638.51, California Trap and Trace Law

Penal Code § 638.51 provides, in pertinent part, as follows:

(a) Except as provided in subdivision (b), **a person may not install or use a pen register or a trap and trace device without first obtaining a court order** pursuant to Section 638.52 or 638.53.

(b) A provider of electronic or wire communication service may use a pen register or a trap and trace device for any of the following purposes:

(1) To operate, maintain, and test a wire or electronic communication service.

* * *

(5) If the consent of the user of that service has been obtained.

# IV. ARGUMENT

## A. Defendant Misstates the Trap and Trace Statute

Defendant's argument is very convoluted. Defendant refers to Cal. Penal Code § 629.51(a)(1) – (2), which defines a "wire communication" among numerous other definitions, unrelated to California Trap and Trace Law. Defendant also does not state how or why § 629.51(a) relates to § 638.51, or if any of the definitions even apply to California Trap and Trace Law at issue in the Complaint. Further, Defendant seems to make the argument that Section 638.51 is ambiguous and does not apply to TikTok Software, but Defendant does not substantiate its contention, only making illogical conclusions. Motion at 12:4, 8-9.

Below, Plaintiff addresses each of these issues in the order presented.

### 1. The Statute Is Unambiguous

The purpose of statutory interpretation is to ascertain and effectuate legislative intent. Statutory interpretation is guided by the "plain meaning rule". "Our analysis begins, as it must, with the text of the statute in question." *Azarte v. Ashcroft*, 394 F.3d 1278, 1285 (9th Cir. 2005). Under the "plain meaning" rule, "where the language [of a statute] is plain and admits of no more than one meaning the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 878 (9th Cir. 2001) (en banc); see also, *Cervantez v. Sullivan*, 719 F.Supp. 899, 910 – 911 (E.D. CA 1989). "In the absence of binding authority, the court must first apply the

plain meaning rule. Where the language is clear and unambiguous, such language must ordinarily be regarded as conclusive. Where the language is plain, no further construction of the statute is required. In analyzing a statute, the court is not prohibited from examining the legislative history for the purpose of determining whether there is a 'clearly expressed legislative intention' which contradicts or alters the plain language of the statute. Very strong evidence, if not explicit language, in the legislative history is necessary to overcome the plain meaning to be drawn from statutory language."

California state courts also use the "plain meaning rule." See e.g., *United Medical Management Ltd. v. Gatto*, 49 Cal. App. 4th 1732, 1737 – 38 (2016) ["Words used in a statute should be given the meaning they bear in ordinary use. If the language is clear and unambiguous, there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature."] *Id*.

Cal. Penal Code 638.51 is not ambiguous. California law defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

**2. Cal. Penal Code § 629.51 Is Not Relevant Because It Does Not Provide the Definitions for California's Trap & Trace Law**

Defendant cites Section 629.51(a)(1) – (2) as evidence of the limited application of trap and trace devices. Motion at 11:21 - 23. The definitions to which Defendant refers apply to the California Invasion of Privacy Act Chapter for Interception of Wires, Electronic Digital Pagers, or Electronic Cellular Telephone Communications. Cal. Penal Code § 629.51, *et seq*. Plaintiff, however, sues under Cal. Penal Code § 638.51, *et seq*. (the "California Trap and Trace Law"), which has its own set of definitions. Therefore, the Court should disregard Defendant's definitions of "electronic communication" and "wire communication". See Motion at 11: 18 – 27.

**3. A Federal Statutory Definition of a Pen Register Is Not Relevant**

Defendant also contends that the statutory definition of a "pen register" under 18 U.S.C.S. § 3127(3), which limits it to a device which records or decodes electronic or other impulses which identify the numbers dialed or otherwise transmitted on the telephone line to which such device is attached, should be applied here. However, the Cal. Penal Code already has its own definition of the process at issue, a "trap and trace" process, which is nowhere limited to recording or "telephone numbers". There is no reason for the Court to consider the definition contained in

statutes that are not at issue. See Motion at 12: 22 – 25 citing *In Re United States*, 885 F. Supp. 197 (C.D. Cal. 1995).

Simply put, there is no language in 538.51 that only law enforcement is prohibited from using trap and trace device , while not constraining foreign social media companies in any manner.

### 4. Defendant Misstates *Greenley v. Konchava, Inc*.

U.S. District Court Judge Cynthia Bashant, of the Central District of California, ruled on several privacy claims on a motion to dismiss. Relevant here, the Court in *Greenley v. Konchava, Inc*., 684 F. Supp. 3d 1024 (S.D. Cal. 2023) ruled as follows:

#### a. Addressing injury in fact

"Plaintiff alleges Defendant collected his personal information in violation of the California Constitution and various California statutes. (Am. Compl. ¶ 1.) Among the collected data are his "geolocation, … communications related to his personal characteristics, mode of living, purchase decisions, personal choices, app selections, spending habits, and click choices." (*Id.* ¶ 38.)

"[T]he Complaint plausibly allege[ed] Defendant collected Plaintiff's data. To be sure, Plaintiff's injury must be "specific to [him]." See *Gaos v. Google Inc*., No. 5:10-cv-4809 EJD, 2012 WL 1094646, at *3 (N.D. Cal. Mar. 29, 2012). The Complaint alleged, "Defendant openly acknowledges that its software development kit (SDK), made available to and inserted by other companies as a plug-in to their

own smartphone applications, intercepts and reads massive amounts of consumer data using its technology in order to identify unique consumers and report on their travel and habits for marketing, verification, and other purposes." (Am. Compl. ¶ 67.) Plaintiff further alleged that he "owns, carries, and regularly uses a cellular device that contains Defendant's Kochava monitoring and intercepting SDK" embedded in apps (id. ¶ 36); "regularly uses his cell phone to access these application(s) in which Defendant utilizes its embedded SDK to track his geolocation, and to monitor and intercept communications" (id. ¶ 38); and "did not know until recently that his purchase decisions, his movements, and his locations, were being tracked by Defendant to market, sell, and advertise to him" (*id.* ¶ 40). This was enough for the Court to reasonably infer that Defendant collected and sold Plaintiff's data."

Defendants "fingerprinted" users and correlated a vast amount of personal information without users' knowledge. (*Id.* ¶ 75.) "Defendant is able to deliver targeted advertising … by in essence 'fingerprinting' each unique device and user, as well as connecting users across devices and devices across users.")); *In re Facebook*, 956 F.3d at 599 ("Facebook gained a cradle-to-grave profile without users' consent."). Thus, the type of information amassed was similarly revealing, and the method similarly secretive. These factors allowed the Court to plausibly infer Defendant's data-collection practices amounted to an egregious breach of social norms."

**b. Addressing alleged violation of Cal. Penal Code § 638.51**

"[P]leading a CIPA violation does not require identifying a specific communication that was intercepted. Such an inference is reasonable given the detailed allegations of Defendant's practices and Plaintiff's alleged use of SDK-embedded apps."

"California law prohibits the installation of a pen register without first obtaining a court order. Cal. Penal Code § 638.51. Defendant argued that its SDK was not a "pen register" but provided no caselaw in support. The Court acknowledged that no court had interpreted this provision of CIPA. The Court could not ignore the expansive language in the California Legislature's chosen definition. The definition is specific as to the type of data a pen register collects—"dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted," but vague and inclusive as to the form of the collection tool—"a device or process." See Cal. Penal C. § 538.50(b). The Court concluded that this indicates courts should focus *less on the form of the data collector* and *more on the result*.

Thus, the Court applied the plain meaning of a "process" to the statute. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique "fingerprinting." (Am. Compl. ¶¶ 67, 74.) Thus, the Court rejected the contention that a private

company's surreptitiously embedded software installed in a telephone cannot constitute a "pen register."

Defendant contends that *Greenley* is factually distinguishable because the software surreptitiously capturing data was embedded in a cellular phone device, while the instant matter relates to a website. This is only because *Greenley* dealt with a "pen register" which captures impulses "transmitted by an instrument" (i.e. a cellular phone containing an application that captured electronic impulses outgoing from the phone at issue.

Here, the "trap and trace" process is installed on Defendant's website, in order to capture "incoming" electronic or other impulses. Compare 638.50(b)&(c)

This case is no different than in the *Greenley* matter "fingerprinting" software was used to surreptitiously "identify the source" of a communication, using "electronic impulses" . Compl. ¶ 14.

**B. <u>TikTok Software on the Website Is Not "Basic Website Functionality"</u>**

Defendant's contention that the TikTok Software on its Website is commonplace and falls within one of the statute's exceptions, specifically, Cal. Penal Code § 538.51(b)(1), is preposterous and not substantiated by anything besides Defendant's speculation. No exception to the Trap and Trace law applies to a website using TikTok to markey children's tutoring services on the grounds that TikTok is used to "operate, maintain or test" a "wire or electronic communication

service." See Motion at 14: 9 – 16. Cal. Penal Code § 538.51(b)(1) states: "(b) A provider of electronic or wire communication service may use a pen register or a trap and trace device for any of the following purposes: (1) **To operate, maintain, and test a wire or electronic communication service."** (Bold added). Each of Defendant's arguments in support of application of this exception to the Website fails.

First, Defendant cites a case, again, interpreting a federal pen register statute, 18 U.S.C. § 3121(b)(1), which has no relevance to the California Penal Code. Motion at 14: 16 – 16; *Columbia Pictures Indus. v. Bunnell*, No. cv 06-1093FMCJCX, 2007 WL 2080419, at * 11. Motion at 13: 16. Defendant's reference to an entirely different statute should be rejected.

Second, Defendant minimizes what the TikTok Software on Defendant's Website is doing. Motion at 15 – 16. The TikTok Software is *not alleged to be tracking an IP address at all*. Motion at 15: 9 – 10. The words "IP address" is nowhere contained in the complaint. The Motion cannot argue these words into existence.

Rather, the Complaint states: "The TikTok Software collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans." Compl. ¶ 10.

The Complaint alleges how it operates on Defendant's Website. As soon as a Website visitor lands on any page, electronic impulses are instantly sent to TikTok to collect a visitor's behavior for targeted marketing. Compl. ¶ 14.

"The TikTok Software is a process to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing, addressing and signaling information generated by users, who are never informed that the Website is collaborating with the Chinese government to obtain their phone number and other identifying information." Compl. ¶ 16. This defines a "trap and trace" device under Cal. Penal Code § 638.51(a), which requires a court order to install. Therefore, Defendant is violating the statute.

Third, each of the cases Defendant cites to support the exception, Cal. Penal Code § 538.51(b)(1), only relates to software that obtains an IP address. It bears repeating that "IP address" tracking by TikTok is not mentioned as part of the Complaint Therefore, the cases are obviously distinguishable, to the extent they are persuasive at all, as none of them relates to the technology at issue here. See Motion at 15 citing *Licea v. Hickory Farms, LLC* LA Superior Court Case No. 23STCV26148, 2024 WL 1698147 (Cal. Super. March 13, 2024) and *Levings v. Choice Hotels Intern, Inc*. LA Superior Court Case No. 23STCV28359 2024 WL 1481189, * 1 (Cal. Super. April 3, 2024).

Fourth, the trap and trace device (the TikTok Software) that Defendant concedes it has embedded on every page of the Website has nothing to do with

merely operating, maintaining, or testing its website, or the internet writ large. See Cal. Penal Code § 538.51(b)(1). Rather, Defendant is using TikTok Software to track users. In doing so Defendant is affirmatively invading Plaintiff's privacy the instant Plaintiff navigates to a page on Defendant's Website, an injury-in-fact. *Greenley v. Konchava, Inc.*, 684 F. Supp. 3d at 1024. For these reasons, the Court should reject Defendant's argument that Plaintiff is allegedly "criminalizing" the Interne..

### C. <u>Plaintiff Alleges She Did Not Consent</u>

In relevant part, CIPA, Penal Code § 638.51(a), prohibits any "person" from "install[ing] or us[ing] a pen register or trap and trace device without first obtaining a court order," or **obtaining the consent of the user**. Cal. Penal Code §§ 638.51(a), (b)(5). Defendant makes a distorted interpretation of the statute claiming Defendant is the "user" under § 638.51(b)(5), and therefore, is immunized from liability because it consented to having the trap and trace device embedded on the Website. As the court states in *Levings v. Choice Hotels Intern, Inc* 2024 WL 1481189, * 1 (Cal. Super. April 3, 2024), "[a]ccepting this argument would allow the exception to swallow the rule whole because a court order is required. If merely owning a website constitutes consent to the use of a pen register or trap and trace device on all visitors to the website, then Section 638.51(a) would be a dead letter. It could never be violated. That is not an acceptable consequence."

Plaintiff is a "user" of the Website, and the subject of the surveillance. Plaintiff is the only person whose consent would conceivably be relevant, and Plaintiff alleges she did not consent. Compl. ¶¶ 9 & 30. The Court should conclude that the exception does not apply to Defendant.

**D. <u>Cal. Penal Code, § 638.51 Is Essentially a Strict Liability Statute</u>**

Defendant contends that a trap and trace device allegedly only records signaling information, and not "contents". Motion at 19: 17 – 28; 20. This is of no moment. There is no allegation that "content" of a communication is part of Plaintiff's claim.

**E. <u>Plaintiff Has Standing to Prosecute the Action</u>**

On a facial challenge to standing, the Court must draw all reasonable inferences in favor of the non-moving party. See *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

The California Invasion of Privacy Act ("CIPA") § 637.2 provides the private right of action for CIPA violations: "Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation . . . ." Cal. Penal Code § 637.2(a); see also, *Byars v. Hot Topic, Inc.,* 656 F. Supp. 3d 1051 (C.D. 2023) [CIPA provides for a private right of action in which the Plaintiff can sue for statutory damages for a violation.]

Since section 637.2 provides a private right of action to any violation of any section in the "chapter," and since section 638.51 is part of the same "chapter" then

section 637.2 provides a private right of action to violations of 638.51. See, Cal. Penal Code, Part 1, Title 15, Chapter 1.5 Invasion of Privacy, which includes §§ 630 – 638.55; see also, *Graham v. Noom, Inc.*, 533 F.Supp.3d 823, 835 "California's Invasion of Privacy Act creates a private right of action for any person who has been injured by a violation of this chapter." Cal. Penal Code § 637.2(a). It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages. § 637.2(c).

Plaintiff also has standing to sue under Article III of the Constitution. "A plaintiff establishes standing by showing (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Greenley v. Kochava, Inc.,* 384 F.Supp.3d 1024, 1036.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1037. Relevant here, "[a] right to privacy 'encompass[es] the individual's control of information concerning his or her person." *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 598 (9th Cir. 2020). Violations of this right fall into the category of traditionally recognized harms. *Patel v. Facebook, Inc*., 932 F.3d 1264, 1272 (9th Cir. 2019) (recognizing the "common law roots of the right to privacy"). As a result, intrusions into privacy can constitute an injury in fact.

*Greenley* discussed the Ninth Circuit's opinion in *In re Facebook* as instructive. *Facebook, Inc.*, 956 F.3d 589. "The issue was whether Facebook-users had standing to sue *Facebook, Inc.* ("*Facebook*") for tracking their browsing histories after they had logged out of Facebook." *Id.* at 595-96. The Ninth Circuit reasoned that Facebook's practices enabled it to "amass a great degree of personalized information . . . without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives." *Id.* at 599. Quoting the Third Circuit, the Ninth Circuit conclusively rejected the argument that the collection of private data is not an injury in fact: "In an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion . . . that federal courts are powerless to provide a remedy when an internet company surreptitiously collected private data . . . is untenable." *Id.* For this reason, the Ninth Circuit upheld standing. *Id.* at 598-99. Thus, the Court in *Greenley* ruled that the Plaintiff had Article III standing and standing to prosecute the various CIPA actions because Plaintiff showed (i) that he suffered an injury in fact that was concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. *Greenley*, 684 F.Supp. 34 at 1036 – 41.

Similarly here, Plaintiff alleges injury in his invasion of privacy. Defendant collected his phone number, email address, date of birth, name, interests, geolocation. Compl. ¶¶ 12, 13, 16. "Although 'the most obvious' concrete harms are

tangible—e.g., physical or monetary, 'various intangible harms can also be concrete.'" *TransUnion v. Ramirez*, 594 U.S. 413 (2021). See e.g., *Davis v. Federal Election Comm'n*, 554 U.S. 724 (2008) (disclosure of private information). As in *In re Facebook*, Plaintiff's inability "to control or prevent the unauthorized exploration" of his private affairs is the root of the alleged injury." See 959 F.3d at 599. Thus, the Complaint plausibly alleges Defendant collected Plaintiff's data. Further, Plaintiff's injury was specific to him. See *Gaos v. Google Inc.*, No. 5:10-cv-4809 EJD, 2012 U.S. Dist. LEXIS 44062, 2012 WL 1094646, at *3 (N.D. Cal. Mar. 29, 2012). Plaintiff alleges he did not consent to Defendant's collection of his data. Compl. ¶ 9. Moreover, Defendant is the cause of Plaintiff's injury having permitted the TikTok Software on the Website. Finally, Plaintiff's injury can be remedied by judicial relief, statutory damages and injunctive relief.

Thus, the Court should follow *Greenley*, 384 F.Supp.3d at 1024 and *Facebook,* 956 F.3d 589 in concluding that Plaintiff has standing to prosecute the instant lawsuit.

## V. <u>CONCLUSION</u>

For the reasons discussed, the Court should deny Defendant's Motion to Dismiss in its entirety. To the extent, however, that the Court finds certain pleadings deficient, the Plaintiff respectfully requests leave to amend.

DATED: June 25, 2024

**TAULER SMITH LLP**

By: */s/ Robert Tauler*
Robert Tauler, Esq.
*Attorneys for Plaintiff*
*Dino Moody*

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Dino Moody, certifies that this brief contains 3,984 words, which complies with the word limit of L.R. 11-6.1.

DATED: June 25, 2024

**TAULER SMITH LLP**

By: */s/ Robert Tauler*
Robert Tauler, Esq.
*Attorneys for Plaintiff*
*Dino Moody*

## CERTIFICATE OF SERVICE

I hereby certified that I served the foregoing document on all parties of record via the Court's CM/ECF system.

DATED: June 25, 2024 **TAULER SMITH LLP**

By: */s/ Robert Tauler*
Robert Tauler, Esq.
*Attorneys for Plaintiff*
*Dino Moody*